STATE, ROBERT S. JOHNSTON ET AL., PROSECUTORS, v. INHABITANTS OF THE CITY OF TRENTON.

1. An assessment for paving a street, made according to frontage, having been set aside, a new assessment was made upon each land-owner's frontage, substantially like the first assessment, in amount; no lands except those fronting on the improvement being assessed. *Held*, that the presumption arising from these facts, that the imposition was in proportion to frontage and not in proportion to benefits, is overcome by the sworn certificate of the commissioners to the contrary.

2. The proper form of making a re-assessment is to estimate the sum with

Johnston v. City of Trenton.

which each land-owner should be charged at the time of the first assess-
ment, and to report that the land-owner is assessed such sum, with
interest from such prior date.

---

On *certiorari* to review the re-assessment made for the pav-
ing of Broad street, in the city of Trenton, from Market to
Taylor streets.

Argued at November Term, 1880, before Justice VAN
SYCKEL.

For the plaintiffs, *G. D. W. Vroom.*

For the defendant, *W. L. Dayton.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The validity of an assessment for pav-
ing Broad street between Market and Taylor streets, in the
city of Trenton, is the subject of this litigation. .

In the year 1873, under the city charter as it then was, the
street commissioner made the assessment upon the lots front-
ing on the street, according to the frontage.

Under the authority of a supplement to the charter, the
common council appointed three commissioners to make a
new assessment, to remedy the defects apparent in the first
one.

The legality of the new assessment is now challenged by
the prosecutors.

The first alleged defect is, that although the assessment pur-
ports on its face to have been made according to actual bene-
fits, it has in fact been arbitrarily laid according to frontage,
and is therefore void.

It appears by reference to the map that the first assessment
was made according to frontage, and the second assessment is
substantially a repetition of the first, with interest added from
the date of the first assessment.

No testimony was taken in the case; it stands upon the two
reports and the map of the lots assessed.   Nor does it appear

whether the lots assessed are improved or unimproved property. The lots are assessed an equal amount per front foot, although some have twice the depth of others, and no lots excepting those fronting on the improvement are assessed.

The presumption arising from these facts, in the absence of anything to rebut it, would be irresistible, that the assessment was arbitrarily made according to frontage.

The commissioners in their report certify as follows :

"We further report that we did proceed to view the lands, and to revise and make a fair, just and equitable assessment upon all lots and subdivision of lots actually benefited by the laying of the said pavement; that we determined and considered all lots and subdivision of lots which have been so benefited, and the particular benefits to each, and the aggregate benefits to all, in connection with the assessable cost, and did make a fair, just and equitable assessment upon each and all lots and subdivision of lots so benefited, in proportion to the actual benefit derived by each, and upon no lot or subdivision of lots more than the actual benefit to the same."

This report shows a compliance with every requisite of the law in this respect essential to a valid assessment. It may be considered an unusual, perhaps an extraordinary circumstance, that the benefits are exactly measured, through the whole line of the improvement, by the feet of frontage, and that the area of land benefited is limited to the frontage, but such a thing is not impossible.

The commissioners who have viewed the premises say under oath that such is the fact, and therefore the presumption which might otherwise be drawn from the facts before alluded to, will not justify this court in declaring that the certificate is false.

A similar question was presented by the case of the *State, Kohler, pros.,* v. *Town of Guttenberg,* 9 *Vroom* 419, 422, in which the court says :

"The mere fact that in making the assessment the commissioners have paid considerable regard to frontage, will not invalidate the assessment if they have been guided by the principle

of apportioning the expense according to the benefits. It is their duty to consider, specifically, the advantage accruing to each plot, but on such consideration they may judge that because of the uniform condition of the land every foot of frontage is equally increased in value. Upon such a conclusion the frontage would, of course, fix the proportion of burden. The proofs in this case raise grave suspicions that the lands about this street are not of a character to admit of the application of such a rule, but they scarcely afford that preponderance of evidence which would justify the court in saying that the commissioners made a mistake of fact when they certified that they had assessed each lot in proportion to the benefit received."

The same view was taken by this court in *State, Pudney, pros.,* v. *Village of Passaic,* 8 *Vroom* 65, both with respect to the right to regard the frontage, and as to the rule, " that there must be a clear preponderance of proof to justify the court in setting aside the assessment of commissioners who have been on the ground, examined it, and made their report of estimates according to the principles presented in the charter."

The second reason relied upon is, that it does not appear that the aggregate amount of benefits assessed does not exceed the cost of the work.

The report shows affirmatively that the aggregate cost of the improvement was $13,190.12, from which the commissioners deducted the sum of $3309.51 for the street crossings, and the sum of $1091.17 for grading the street, and assessed on the property benefited only the balance, $8786.44.

In this there was no error of which the prosecutors can complain.

The remaining reason is, that each lot has been assessed, in addition to a fixed sum, with the interest thereon from December 22d, 1873, without any statement or ground assigned for the imposition of this addition of interest.

It appears in the case that the first assessment was made December 22d, 1873. In making the re-assessment it was the duty of the commissioners to ascertain what sum should

have been assessed to each lot at the date of the first assessment. They were appointed to correct any errors of estimate in the first assessment, and that was the time to which their inquiry was properly directed. When they had computed the sum to be charged to a land-owner, it was to be laid as of the prior date, and the land-owner was properly chargeable with interest from the date of the first assessment.

The report is correct in form and in substance. *Jersey City* v. *O'Callaghan,* 12 *Vroom* 349.

The assessment should be affirmed.